# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF **ALABAMA**
### SOUTHERN DIVISION

JAN CLINTON CHILSON,     *
                    *
     **Plaintiff,**     *
                    *
vs.                  *   **CIVIL ACTION NO. 19-00016-TFM-B**
                    *
KENNETH J. BRAITHWAITE,   *
Secretary, Department of   *
the Navy,            *
                    *
     **Defendant.**     *

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Defendant Kenneth J. Braithwaite, Secretary, Department of the Navy's[1] ("Agency" or "Navy") motion to dismiss. (Doc. 28). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that the Navy's motion be **GRANTED in part** and **DENIED in part**.

---

[1] The Court takes judicial notice that Kenneth J. Braithwaite is the current Secretary of the Navy. Accordingly, pursuant to Fed. R. Civ. P. 25(d), the Clerk is **DIRECTED** to substitute Kenneth J. Braithwaite, Secretary, Department of the Navy, as the Defendant in this case.

# I.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Jan Clinton Chilson ("Chilson") was formerly employed as a Program Analyst for the Navy's Strategic Weapons Facility, Atlantic ("SWFLANT"), located in Kings Bay, Georgia.[2] (Doc. 1 at 5; Doc. 8-1 at 13).  He retired from federal service effective May 31, 2015.  (Doc. 1 at 5; Doc. 8-2).

In April 2014, Chilson submitted a request for reasonable accommodation, asking to be reassigned to another position because he was unable to complete all of the budgetary responsibilities of his position due to his attention deficit hyperactivity disorder ("ADHD") and dyscalculia.  (Doc. 8-1 at 34).  On September 10, 2014, Chilson filed a formal Equal Employment Opportunity ("EEO") complaint, alleging that the Agency had discriminated against him on the basis of disability (ADHD and dyscalculia) when he was not provided with reasonable accommodation.  (Id. at 35).

After the conclusion of the Agency's investigation, the Agency's Office of EEO issued a final agency decision finding that Chilson had failed to prove that he was subjected to discrimination.  (Id.).  Chilson then appealed to the United States Equal Employment Opportunity Commission ("EEOC") Office of Federal Operations ("OFO"), which issued a decision dated November 7, 2017

---

[2] The Navy states that "SWFLANT is a field activity of, and reports to the Strategic Systems Programs (SSP), which is headquartered at the Washington Navy Yard, DC."  (Doc. 28 at 3).

affirming the Agency's final agency decision finding that Chilson failed to prove that the Navy discriminated against him. (Id. at 33-40). A footnote to the decision stated:

> We note that on appeal Complainant asserts, among other things, that the Agency improperly disclosed his confidential medical information on October 1, 2014, and failed to reassign him in 2015, which forced him into retirement. These matters were not the subject of Complainant's formal complaint. Complainant is advised that if he wishes to pursue, through the EEO process, these additional claims he raised for the first time on appeal, he shall initiate contact with an EEO Counselor within 15 days after he receives this decision.

(Id. at 37).

On December 23, 2017, Chilson filed a formal complaint of discrimination with the Agency's EEO office. (Id. at 12-17). He alleged that the Agency discriminated against him based on his disabilities (ADHD and dyscalculia) when the Agency improperly disclosed his confidential medical information during the reasonable accommodation recruitment process (August 2014 through May 2015) and failed to reassign him to a different position in 2015. (Id. at 13-16). He also alleged that this forced him into retirement. (Id.). In a letter dated January 31, 2018, the Agency's EEO Office dismissed Chilson's complaint for failure to timely contact an EEO counselor within forty-five days of when he knew or should have known of the above-referenced events. (Doc. 1 at 8; Doc. 8-1 at 1-5). Chilson appealed to the EEOC OFO, which affirmed the dismissal. (Doc. 1 at 8). Chilson then filed a

request for reconsideration. (Id.). In a decision dated October 4, 2018, the EEOC OFO denied Chilson's request for reconsideration, informed him that he had no further right of administrative appeal, and notified him that he had the right to file a civil action in an appropriate United States district court within ninety calendar days from the date he received the EEOC's decision. (Id. at 8-10). The certificate of mailing attached to the decision stated: "**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.**" (Id. at 10) (bold in original).

Chilson, proceeding *pro se*, commenced this action by mailing his complaint to the Court. (See Doc. 1). The envelope was postmarked January 11, 2019, and the complaint was received and docketed by the Court on January 15, 2019. (See id.). In count one of his complaint, Chilson alleges that the Agency discriminated against him based on his disabilities (ADHD and dyscalculia) by releasing inaccurate "disabled-medical information" during Chilson's reasonable accommodation recruitment process, and that this resulted in an unsuccessful job search and ultimately forced him to retire "four years ahead of schedule."[3] (Id. at 3-5). In

---

[3] Chilson utilized a form complaint and checked the box on the complaint form indicating that his disability-related claims are brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 to 12117 ("ADA"). (Doc. 1 at 3). However, because Chilson was a federal employee, his claims against the Navy for disability-based discrimination are governed not by the

count two, Chilson alleges that the Navy violated the Privacy Act of 1974, 5 U.S.C. § 552a, by (1) releasing his medical information, which mischaracterized his limitations, to Department of the Navy recruiters during the reasonable accommodation reassignment process in October 2014, and (2) by sharing his reasonable accommodation request and associated documentation with a Navy doctor in May 2015 without authorization. (Id.). In count three, Chilson alleges that the Agency "did not adhere the guidance of the Merit System Principles," 5 U.S.C. § 2301, because it utilized inaccurate and outdated medical information during his reasonable accommodation recruitment process, which "tainted" his

---

ADA, but rather by the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. See Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008) ("The [Rehabilitation] Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability.") (quotation omitted); Farid v. Brennan, 2018 U.S. Dist. LEXIS 238367, at *3, 2018 WL 7347625, at *1 (N.D. Fla. July 12, 2018) ("[T]he ADA defines 'employer' broadly, but the United States and corporations owned thereby are explicitly exempted from this definition.") (citing 42 U.S.C. § 12111(5)(B)(i)); Crawford v. Chao, 158 F. App'x 216, 219 (11th Cir. 2005) (per curiam); 29 U.S.C. § 794a. However, "[t]he standard for determining liability under the Rehabilitation Act is the same as that under the [ADA]; thus, cases involving the ADA are precedent for those involving the Rehabilitation Act." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam); see 29 U.S.C. § 791(f) (incorporating the ADA standards into the Rehabilitation Act); Allmond v. Akal Sec., Inc., 558 F.3d 1312, 1316 n.3 (11th Cir. 2009) (noting that, because the same standards govern discrimination claims under the Rehabilitation Act and the ADA, courts should discuss those claims together and rely on cases construing those statutes interchangeably).

opportunities to obtain other employment within the Department of the Navy.  (Id.).

Chilson attaches to his complaint the October 4, 2018 decision of the EEOC OFO denying his request for reconsideration.  (Id. at 8-10).  In the decision, the EEOC OFO informed Chilson: "You have the right to file a civil action in an appropriate United States District Court within **ninety (90) calendar days** from the date that you receive this decision."  (Id. at 9) (bold in original).  In his complaint, Chilson alleges that he received the notice of his right to sue on October 13, 2018.  (Id. at 5, 7).  In a continuation sheet appended to his complaint form, Chilson states: "I was out of State from September 26, 2017 until October 13, 2018.  During that respective time frame I had my mail on hold at the local post office and received the Notice of Right to Sue letter on October 13, 2018."  (Id. at 7).

On May 6, 2019, the Navy filed a motion to dismiss Chilson's complaint on several grounds, including failure to effect proper service.  (Doc. 8).  The undersigned entered a Report and Recommendation on the Navy's motion, which found that Chilson had failed to properly serve the Navy and recommended that Chilson be given twenty additional days to perfect service.  (Doc. 20).  The undersigned further recommended that the remainder of the motion to dismiss be denied without prejudice to the Navy's right to re-file the motion if Chilson effected proper service.  (Id. at 16).

The District Judge adopted the Report and Recommendation.[4] (Doc. 24).

After Chilson effected proper service, the Navy filed the instant motion to dismiss Chilson's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 28). In its motion, the Navy seeks dismissal of count one for failure to state a claim on the basis of untimeliness, dismissal of count two as time-barred, and dismissal of count three for lack of subject matter jurisdiction based on failure to exhaust administrative remedies. (Id. at 12-19). The motion has been fully briefed and is now ready for resolution.

## II.  **STANDARDS OF REVIEW**

### A.  **Rule 12(b)(1).**

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of a claim when the court lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A challenge to a district court's exercise of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms: a "facial" attack or a "factual" attack. Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In a facial attack, the court simply must examine the pleading and determine whether the plaintiff has sufficiently alleged a basis

---

[4] The Court also directed that the parties be given the opportunity to brief the issue of jurisdiction in light of the Supreme Court's ruling in Fort Bend Cnty. v. Davis, 139 S. Ct. 1843 (2019). (Doc. 24 at 2).

for subject matter jurisdiction, while accepting the plaintiff's allegations as true and construing them most favorably to the plaintiff. Id. at 1529. A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings. Id. When the challenge to subject matter jurisdiction is factual, the court may consider matters outside the pleadings and weigh conflicting evidence, and no presumption of truthfulness attaches to the plaintiff's allegations. Id. Additionally, when a party challenges subject matter jurisdiction, the court has authority to resolve factual disputes and is given "discretion to devise a method for making a determination with regard to the jurisdictional issue." Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1170 (11th Cir. 2011) (quotation omitted). Here, the Navy appears to bring a factual challenge, arguing that the Court lacks subject matter over Chilson's claim that the Agency violated merit system principles because Chilson failed to exhaust administrative remedies, and the parties have submitted exhibits that are relevant to the issue. (See Docs. 8-1, 14).

**B.  Rule 12(b)(6).**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On such a

motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Little v. City of N. Miami, 805 F.2d 962, 965 (11th Cir. 1986) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court is not required to accept as true a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S at 678 (quoting Twombly, 550 U.S at 556).

A court reviewing a motion to dismiss under Rule 12(b)(6) is typically limited to the four corners of the complaint. St. George, 285 F.3d at 1337. However, "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); see also Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010); Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

**C.  *Pro Se* Litigation.**

Because Chilson is proceeding *pro se*, the Court gives his allegations a liberal construction, holding them to a less stringent standard than those drafted by an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d

1359, 1369 (11th Cir. 1998) (internal citations omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

## III. **ANALYSIS**

### A. **Count One.**

The Navy first argues that Chilson's Rehabilitation Act claim should be dismissed because Chilson did not file his complaint within ninety days of receiving notice of his right to file a civil action from the EEOC OFO. (Doc. 28 at 12-16). Chilson counters that his complaint was timely filed because he mailed it to the Court exactly ninety days after receiving the right-to-sue notice. (Doc. 30 at 1-2).

An action brought pursuant to the Rehabilitation Act must be filed within ninety days of the receipt of the EEOC's right-to-sue letter. See Skipper v. BASF Corp, 2011 U.S. Dist. LEXIS 48718, at *1-2, 2011 WL 1740535, at *1 (S.D. Ga. Apr. 18, 2011) ("An action brought pursuant to Title VII, the Rehabilitation Act, or the Age Discrimination in Employment Act must be filed within 90 days of the receipt of the EEOC's right-to-sue letter."), report and recommendation adopted, 2011 U.S. Dist. LEXIS 48677, 2011 WL 1740533 (S.D. Ga. May 5, 2011); 29 U.S.C. § 794a(a) (incorporating

preconditions to suit applicable to Title VII claimants into Rehabilitation Act); 42 U.S.C. § 2000e-16(c) ("Within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action . . . ."); 29 C.F.R. § 1614.407; Doe v. Garrett, 903 F.2d 1455, 1461 (11th Cir. 1990) ("[P]rivate actions against federal government employers under the [Rehabilitation] Act . . . must satisfy the requirement of exhaustion of administrative remedies in the manner prescribed by section [794a(a)(1)] and thus by Title VII.") (quotation omitted). Filing within the ninety-day period is a condition precedent subject to equitable tolling or waiver, rather than a jurisdictional bar. Fouche v. Jekyll Island–State Park Auth., 713 F.2d 1518, 1525–26 (11th Cir. 1983). Once the defendant contests the issue of whether the plaintiff filed his complaint within ninety days of his receipt of the EEOC's right-to-sue notice, "the plaintiff has the burden of establishing that he met the ninety day filing requirement." Green v. Union Foundry Co., 281 F.3d 1229, 1234 (11th Cir. 2002).

In the instant matter, it is undisputed that the EEOC OFO issued its decision on Chilson's request for reconsideration on October 4, 2018. (See Doc. 1 at 8-10). The decision included a section entitled "Complainant's Right to File a Civil Action".

(See id. at 9). In that section, Chilson was informed that the EEOC's decision was final, that he had no further right of administrative appeal, and that he had the right to file a civil action in an appropriate United States district court within ninety calendar days from the date he received the decision.[5] (See id.). Also included in the document was a certificate of mailing certifying that the decision was mailed to Chilson on October 4, 2018 and expressly advising Chilson that, for timeliness purposes, the EEOC OFO would presume that the decision was received within five calendar days of mailing (i.e., by October 9, 2018).[6] (See id. at 10).

However, Chilson alleges that he did not receive the right-to-sue notice until October 13, 2018, because he "was out of State from September 26, 2017 until October 13, 2018" and had his "mail on hold at the local post office" during that time. (Id. at 7). If the Court were to accept Chilson's alleged date of receipt, thus making October 13, 2018 the triggering date, Chilson would have had to file his complaint with the Court no later than January 11, 2019.

---

[5] For simplicity, the Court shall refer to this as the right-to-sue notice.

[6] Based on the presumption of receipt within five days after mailing, October 9, 2018 would be the date of receipt for the right-to-sue notice, and the ninety-day limitation period would expire on January 7, 2019.

The Navy contends that the EEOC OFO's presumed receipt date of October 9, 2018 should be deemed controlling as to when Chilson received the right-to-sue notice.  (Doc. 28 at 14).  According to the Navy, Chilson has presented nothing to corroborate his alleged date of receipt, and allowing him to claim the benefit of a delayed receipt date under these circumstances would allow plaintiffs to indefinitely delay receipt of right-to-sue letters.  (Id.).

The Eleventh Circuit has declined to impose a hard and fast rule for determining when a plaintiff has received notice of his right to sue.  Kerr. v. McDonald's Corp., 427 F.3d 947, 952 (11th Cir. 2005) (per curiam).  It has expressed concern over enabling plaintiffs to "enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless."  Lewis v. Conners Steel Co., 673 F.2d 1240, 1242 (11th Cir. 1982) (per curiam); Law v. Hercules, Inc., 713 F.2d 691, 692-93 (11th Cir. 1983) (per curiam).  Thus, plaintiffs are required to assume "some mimimum responsibility in resolving their claims."  Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1340 (11th Cir. 1999); Lewis, 673 F.2d at 1242.  Recognizing this minimal responsibility, the Eleventh Circuit applies "a case-by-case approach in determining what constitutes receipt and when the time is triggered."  Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 524 (11th Cir. 1991); see also Zillyette, 179 F.3d at 1341.  "Receipt is presumed when a complainant is unable to show

that [his] failure to receive [a right-to-sue] letter was in no way [his] fault." Kerr, 427 F.3d at 952.

The Court finds that Chilson has failed to meet his burden of establishing that he filed his lawsuit within ninety days of receiving the EEOC OFO's right-to-sue notice. First, Chilson's assertions that he was out of state from September 26, 2017 until October 13, 2018, that he had his mail on hold at the local post office during that time period (which spanned over a year), and that he did not receive the right-to-sue notice until October 13, 2018, do not demonstrate that he exercised minimal responsibility to obtain the right-to-sue notice and timely act upon it. In the undersigned's opinion, allowing a complainant to travel out of state for more than a year during pending EEO proceedings while placing his mail on hold at a post office in his home state, and then claim the benefit of the resulting delayed receipt date, would create "a manipulable open-ended time extension which could render the statutory limitation meaningless." See Lewis, 673 F.2d at 1242; see also Bell v. Eagle Motor Lines, 693 F.2d 1086, 1086 (11th Cir. 1982).

Moroever, even if the Court were to accept October 13, 2018 as the date on which Chilson received the notice, his complaint was still untimely because it was not received and docketed by the Clerk's office until January 15, 2019, ninety-four days after Chilson's alleged date of receipt. Chilson's contention that there

is no requirement that the complaint be actually received by the Court within ninety days, only that it be "sent" within ninety days (see Doc. 30 at 1-2), is without merit.  "A civil action is instituted only by 'filing a complaint with the court.'" Strickland v. Wayne Farms-Southland Hatchery, 132 F. Supp. 2d 1331, 1333 (M.D. Ala. 2001) (quoting Fed. R. Civ. P. 3).  The Eleventh Circuit has held that "a complaint is 'filed' for statute of limitations purposes when it is 'in the actual or constructive possession of the clerk . . . .'" Rodgers v. Bowen, 790 F.2d 1550, 1552 (11th Cir. 1986) (quoting Leggett v. Strickland, 640 F.2d 774, 776 (5th Cir. Unit B Mar. 1981));[7] see also Cooper v. City of Ashland, 871 F.2d 104, 105 (9th Cir. 1989) (per curiam) ("When papers are mailed to the clerk's office, filing is complete when the papers are received by the clerk."); Turner v. Singletary, 46 F. Supp. 2d 1238, 1240 (N.D. Fla. 1999) ("[C]omplaints and petitions must be *filed* prior to expiration of the applicable statute of limitations, not merely *mailed* . . . . This has been the rule governing all statutes of limitation for many years.") (emphasis in original); Hunt v. Chase, 2010 U.S. Dist. LEXIS 5411, at *11-12, 2010 WL 235118, at *4 (W.D. Pa. Jan. 15, 2010) ("[T]he general rule is that the mere mailing of the complaint before the

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

expiration of the limitations period fails to satisfy the requirement that the complaint be timely filed."). Thus, "[f]ilings received by the clerk's office after a deadline are late even if they were mailed before the deadline." Hopper v. Garrett, 828 F.2d 19 (6th Cir. 1987) (unpublished); Clark v. Milam, 152 F.R.D. 66, 69 (S.D. W. Va. 1993) ("Papers arriving after a deadline are untimely even if mailed before the deadline.").

In Strickland, the court faced a similar set of facts and held that the filing of a complaint takes place at the time it is received by the clerk of court, not when the complaint is mailed. 132 F. Supp. 2d at 1333. Counsel for the plaintiff, who alleged that her employer had discriminated against her based on disability in violation of the ADA, represented that he had mailed the complaint three days before the ninety day filing period ended, and that mail from his office usually reached the federal courthouse in two days. Id. at 1332. The court held that the plaintiff's ADA claim was time-barred and stated that the plaintiff was "required to assume some minimum responsibility . . . for an orderly and expeditious resolution of [her] dispute." Id. at 1333 (citations and internal quotation marks omitted); see also Davis v. Gates, 2009 U.S. Dist. LEXIS 138405, at *7-9, 2009 WL 10664833, at *3 (N.D. Ga. Oct. 19, 2009) (finding pro se plaintiff's complaint untimely despite plaintiff's allegation that she had taken the complaint to a post office and mailed it to the court

via first class mail three days prior to the filing deadline, because the complaint "was filed when it was received by the clerk's office . . . two days after the ninety day filing deadline had passed"), report and recommendation adopted, 2009 U.S. Dist. LEXIS 138408, 2009 WL 10664962 (N.D. Ga. Nov. 19, 2009).

The undisputed evidence in this case reflects that Chilson mailed his complaint on January 11, 2019, but it was not received by the Clerk's office until January 15, 2019, more than ninety days after the date on which Chilson alleges he received the right-to-sue notice.  Thus, even if the Court were to find that Chilson received the right-to-sue notice on October 13, 2018, his complaint was nevertheless untimely because it was not filed within ninety days of that date.

Chilson argues that to the extent his complaint is deemed untimely, he is entitled to equitable tolling of the limitations period.  (Doc. 30 at 2-5).  Courts apply equitable tolling sparingly because it is an "extraordinary remedy." Chang v. Carnival Corp., 839 F.3d 993, 996 (11th Cir. 2016) (per curiam). To prove equitable tolling in a discrimination lawsuit, the party seeking tolling must prove "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016) (en banc). The Eleventh Circuit has stated that "the interests of justice on

which a tardy plaintiff relies do not support a plaintiff who has 'not file[d] h[is] action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running.'" See Chang, 839 F.3d at 996 (citation omitted). It is the burden of the plaintiff to show that equitable tolling is warranted. Id.

In the case at bar, there is no indication that Chilson pursued his rights diligently or that some extraordinary circumstance prevented him from filing his complaint in a timely manner. As noted *supra*, the right-to-sue notice notified Chilson that he was required to file any complaint within ninety days of his receipt of the right-to-sue notice. Assuming *arguendo* that Chilson received the notice on October 13, 2018, as he asserts, he still had nearly three months within which to file his complaint. Chilson offers nothing to demonstrate that he acted with diligence, nor has he offered anything which suggests that his efforts to timely file his complaint were somehow impeded. See Cameron v. Dep't of Veterans Affairs, Sec'y, 2010 U.S. Dist. LEXIS 157084, at *2, 2010 WL 11562040, at *1 (N.D. Ala. May 18, 2010) (finding no due diligence when plaintiff failed to timely file her lawsuit despite having more than eighty days from her alleged receipt date to do so); Wallace v. United States, 981 F. Supp. 2d 1160, 1164 (N.D. Ala. 2013) ("Neither miscalculation of the limitations period, nor ignorance of the law, constitutes an extraordinary

circumstance that would justify equitably tolling of the statute of limitations."); <u>Hunt</u>, 2010 U.S. Dist. LEXIS 5411, at *12-13, 2010 WL 235118, at *4 (same). Accordingly, Chilson's Rehabilitation Act claim is due to be dismissed, because Chilson's filing was untimely.

**B. Count Two.**

The Navy next argues that Chilson's Privacy Act claims regarding the alleged improper disclosure of his "disabled-medical information" are time-barred because Chilson did not file his complaint within the applicable two-year limitations period. (Doc. 28 at 17-18). In his response to the Navy's motion, Chilson appears to argue the underlying merits of his Privacy Act claims, but he fails to address their timeliness. (<u>See</u> Doc. 30).

The Privacy Act "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." <u>Doe v. Chao</u>, 540 U.S. 614, 618 (2004). The Privacy Act provides, in part: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ." 5 U.S.C. § 552a(b). It further provides that an individual may bring a civil action against a federal agency whenever any agency:

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual[.]

Id. at § 552a(g)(1).

The statute of limitations for a Privacy Act claim is two years from the date on which the cause of action arises, except that where an agency "has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation." Id. at § 552(a)(g)(5). "A cause of action 'arises' under the Privacy Act when the aggrieved individual knows or has reason to know of the alleged violation." Smithers v. Wynne, 2007 U.S. Dist. LEXIS 23411, at *17, 2007 WL 951748, at *6 (M.D. Ga. Mar. 28, 2007), aff'd, 319 F. App'x 755 (11th Cir. 2008).

As best the Court can discern, Chilson alleges two separate violations of the Privacy Act. First, Chilson alleges that the Agency released his "disabled-medical information" to Department

of the Navy recruiters without authorization in October 2014, which included inaccurate and outdated statements that Chilson had "difficulty in arithmetic and diminished performance in activities requiring mathematical calculations and manipulation; inability to perform budgetary duties; inability to focus in order to accomplish tasks; and inability to function in a high stress position." (Doc. 1 at 4-5).  Second, Chilson alleges that the Agency shared his April 2014 reasonable accommodation request and all associated documentation, including medical information, with a Navy doctor in May 2015 without his authorization.  (Id. at 5).

The Navy argues that Chilson became aware of the alleged October 2014 disclosure to Navy recruiters when he received the Agency's EEO Record of Investigation in March 2015.  (Doc. 28 at 17).  As support for this contention, it cites the Agency's Notice of Dismissal of Chilson's EEO complaint dated January 31, 2018. (Id.).  The Notice of Dismissal, which was attached as an exhibit to the Navy's original motion to dismiss, provides, in relevant part, as follows:

> In regard to the claim of improper disclosure of medical information, you are alleging that a 1 October 2014 letter from the Reasonable Accommodation Coordinator to the Navy's Office of Civilian Human Resources (OCHR) in regard to a job search undertaken on your behalf, improperly disclosed confidential medical information. In your appeal statement (dated 4 August 2015), you referenced that letter appearing in the Investigative File, page 193. I note that the Appeal File was mailed to you on or about 18 March 2015; and in a letter dated 21 April 2015, you requested a hearing. Allowing five

days for mailing, **you would have been made aware of the Reasonable Accommodation Coordinator's letter of 1 October 2014 no later than 23 March 2015.**

(Doc. 8-1 at 2) (emphasis added).[8]

Based on the determination of the Agency EEO officer that Chilson would have been made aware of the October 2014 disclosure to recruiters no later than March 23, 2015, when the investigative file was mailed to him, the Navy argues that Chilson's Privacy Act claim is time-barred. (See Doc. 28 at 17; Doc. 8-1 at 2). However, the Court notes that in Chilson's response to the Navy's initial motion to dismiss, he argued that he did not receive the full investigative file until early 2018. (Doc. 11 at 3-4). Given that Chilson disputes when the full investigative file was made available to him, the undersigned declines to accept the Agency EEO's determination as a basis for finding that Chilson's Privacy Act claim is time-barred. See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (stating that "indisputability is a

_____

[8] As noted *supra*, while generally "nothing beyond the face of the complaint and the attached documents are considered in analyzing a motion to dismiss, [courts] make an exception where the plaintiff refers to a document in his complaint, it is central to his claim, the contents are not disputed, and the defendant attaches it to his motion to dismiss." Bryant v. Citigroup Inc., 512 F. App'x 994, 995 (11th Cir. 2013) (per curiam) (citing Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007)). Alternatively, when considering a motion to dismiss, courts may take judicial notice of the contents of relevant public records, such as documents from the EEOC's administrative record. See Ellison v. Brennan, 2020 U.S. Dist. LEXIS 86788, at *4-6, 2020 WL 2523287, at *2 (M.D. Fla. May 18, 2020).

prerequisite" for a fact to be judicially noticed, and that it is impermissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action).

In his complaint, Chilson does not allege when he became aware that improper and inaccurate medical information had been released to Navy recruiters in October 2014 without his authorization. (See Doc. 1). In another of Chilson's filings addressing the Navy's initial motion to dismiss, Chilson asserted that he had consistently informed the Navy from 2015 through 2018 that inaccurate and derogatory medical information was "utilized for recruiting purposes" which "would have a negative impact upon Plaintiff within Navy recruiting circles." (Doc. 14 at 3-4). Chilson further asserted that in October 2017, the EEOC "acknowledged the unauthorized medical release of the Plaintiff's mental health condition, however, made no mention of the fact that the two-year time restriction had expired or even existed." (Id. at 4).

Viewing this information in the light most favorable to Chilson, his admission suggests that at some point in 2015, he at least suspected that incorrect medical information had been utilized for recruiting purposes, and that the Navy confirmed it in October 2017. What is not clear at this juncture, however, is exactly when Chilson knew or should have known that incorrect and derogatory medical information had been provided to Navy

recruiters in October 2014. Thus, although it appears extremely likely that Chilson was aware of the alleged October 2014 disclosure more than two years before filing this lawsuit,[9] Chilson's Privacy Act claim relating to the alleged 2014 disclosure cannot be dismissed as time-barred based on the limited information before the Court at this stage.

The Court further notes that while the Navy seeks dismissal of count two in its entirety, it does not address the timeliness of Chilson's Privacy Act claim relating to the alleged May 2015 disclosure to a Navy doctor. (See Doc. 28 at 17-18). Chilson's response to the Navy's prior motion to dismiss suggested that he did not become of the alleged May 2015 violation until early 2018, "well within" the Privacy Act's two-year limitation period. (See Doc. 11 at 3-4). Absent any argument by the Navy or information

---

[9] Chilson filed a document entitled "Plaintiff's Response to Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss" while the Navy's original motion to dismiss was pending, (Doc. 14). In that filing, Chilson attached an email that he sent to Command Deputy EEO Officer Brenda Braswell on April 14, 2015, under subject line "Transmission of the Investigative File." (Id. at 19-20). In the email, Chilson asserted that on November 4, 2014, the SSP's Reasonable Accommodation Coordinator "stated that the following were my medical limitations: 'difficulty in arithmetic and diminished performance in activity requiring mathematical calculations and manipulation, inability to perform budgetary duties, inability to focus in order to accomplish task, and inability to function in high stress positions." (Id. at 20). The Court notes that this is almost identical to the language that Chilson's complaint alleges was released by the Agency to Department of the Navy recruiters in October 2014. (See Doc. 1 at 5).

establishing that Chilson knew or should have known of the alleged May 2015 violation more than two years before filing his complaint, there is no basis to dismiss as untimely Chilson's Privacy Act claim relating to the alleged May 2015 disclosure. Accordingly, the undersigned recommends that the Navy's motion to dismiss Chilson's Privacy Act claims based on the statute of limitations be denied.

**C.   Count Three.**

In count three, Chilson alleges that the Navy violated "Merit System Principles, 5 U.S. Code 2301",

> since its recruitment process for the Plaintiff was not
> a fair and open competetion [sic] which assured equal
> opporutnity [sic].   The selection should have been
> determined soley [sic] on the basis of relative ability,
> knoweldge [sic] and skills of the individual.   Instead
> the Agency utilized not accurate nor current medical
> information which tainted the Plaintiff's oppporunities
> [sic] to obtain other employment in the Department of
> the Navy since disabled medical information had been
> shared by the Agency to other commands recruiters in the
> area.

(Doc. 1 at 5).  The Navy contends that the Court lacks subject matter jurisdiction over Chilson's claim that the Navy violated merit system principles during the reasonable accommodation recruitment process because there is no evidence that Chilson exhausted his administrative remedies prior to filing this action. (Doc. 28 at 18-19).

Section 2301 is part of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, which "established a

comprehensive system for reviewing personnel action taken against federal employees." United States v. Fausto, 484 U.S. 439, 455 (1988). Section 2301(b) sets forth a series of broad "merit system principles" to govern federal personnel management practice. Among the merit system principles is the requirement that selection and advancement "be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity." 5 U.S.C. § 2301(b)(1). Under the CSRA, "certain federal employees may obtain administrative and judicial review of specified adverse employment actions[,]" Elgin v. Dep't of the Treasury, 567 U.S. 1, 5 (2012), and the CSRA creates a remedial scheme through which federal employees "challenge 'prohibited personnel practices' by their supervisors." Saul v. United States, 928 F.2d 829, 833 (9th Cir. 1991) (citing 5 U.S.C. § 2302). The "prohibited personnel practices" of the CSRA include taking any personnel actions violative of the merit system principles contained in § 2301. See 5 U.S.C. § 2302(b)(12).

The CSRA provides a comprehensive claims procedure for federal employees and "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." Fausto, 484 U.S. at 443. Outside of claims under Title VII and other anti-discrimination laws, "the CSRA provides the exclusive procedure for challenging

federal personnel decisions." Hendrix v. Snow, 170 F. App'x 68, 80 (11th Cir. 2006) (per curiam); Nyunt v. Chairman, Broad. Bd. of Governors, 589 F.3d 445, 448 (D.C. Cir. 2009). A plaintiff's "failure to exhaust his administrative remedies under the CSRA precludes judicial review of his allegations of improper agency action." Ferry v. Hayden, 954 F.2d 658, 661 (11th Cir. 1992).

Generally, an employee who believes he has been the victim of a prohibited personnel practice must first complain to the U.S. Office of Special Counsel ("OSC"),[10] which then investigates the complaint. Weber v. United States, 209 F.3d 756, 758 (D.C. Cir. 2000) (citing 5 U.S.C. § 1214). If the OSC determines that a prohibited personnel practice has occurred, it must report its findings to the Merit Systems Protection Board ("MSPB"), and it may petition the MSPB on the employee's behalf. Id. If the OSC finds no agency wrongdoing, the employee himself may bring an individual action before the MSPB. Id. (citing 5 U.S.C. § 1221). Once the MSPB completes its review, the employee may then seek judicial review in the Court of Appeals for the Federal Circuit ("Federal Circuit"), which reviews the administrative record under the arbitrary and capricious standard. Jimenez v. Napolitano,

---

[10] The OSC is "charged with protecting employees, former employees, and applicants for employment from prohibited personnel practices[.]" Jimenez v. Napolitano, 2012 U.S. Dist. LEXIS 70761, at *12 (D.C. Cir. May 15, 2012).

2012 U.S. Dist. LEXIS 70761, at *12-13 (D.C. Cir. May 15, 2012) (citing 5 U.S.C. §§ 7701(c), 7703(c)(1)).

There are limited instances in which an employee may bypass the OSC and appeal certain adverse actions directly to the MSPB. Grant v. Dep't of Treasury, 272 F. Supp. 3d 182, 185 (D.D.C. 2017) (citing 5 U.S.C. §§ 7512, 7701). Actions directly appealable to the MSPB include (1) a removal; (2) a suspension for more than fourteen days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of thirty days or less. 5 U.S.C. § 7512. A final decision by the MSPB is then directly appealable to the Federal Circuit. Vanover v. O'Leary, 967 F. Supp. 1211, 1220 (N.D. Okla. 1997), aff'd sub nom. Vanover v. Dep't of Energy, 153 F.3d 730 (10th Cir. 1998).

Another procedural avenue exists for "mixed" cases, where an employee alleges one of the five personnel actions that are directly appealable to the MSPB *and* alleges that the action was based on discrimination. Kloeckner v. Solis, 568 U.S. 41, 44 (2012); see also 5 U.S.C. § 7702(a)(1); 29 C.F.R. § 1614.302. A federal employee bringing a mixed case must elect to file either a "mixed case complaint"[11] with his agency's EEO office or a "mixed

---

[11] "A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the [MSPB]. The complaint may contain only an allegation of employment discrimination or it may contain

case appeal"[12] directly with the MSPB, but not both.  29 C.F.R. §
1614.302(b).  "By statute, the relevant agency EEO office and the
MSPB can and must address both the discrimination claim and the
appealable personnel action." Greenhouse v. Geren, 574 F. Supp.
2d 57, 65 (D.D.C. 2008) (citation omitted).

If the employee chooses to file a mixed case complaint with
his agency's EEO office and "receives notification that the
agency's EEO is dismissing [his] claims, the claimant may either
file a civil action in federal district court or appeal the matter
to the MSPB within thirty days of receipt of the agency's final
decision." Holland v. Dep't of Health & Human Servs., 51 F. Supp.
3d 1357, 1366–67 (N.D. Ga. 2014) (citing 29 C.F.R. §
1614.302(d)(3); 29 C.F.R. § 1614.310(a)).  If the employee elects
to appeal directly to the MSPB or if he appeals to the MSPB after
pursuing the claim with his agency's EEO office, and the MSPB
upholds the personnel action, the employee "may request additional
administrative process, this time with the EEOC, or else [he] may
seek judicial review" in district court. Kloeckner, 568 U.S. at
45 (citations omitted).

---

additional allegations that the MSPB has jurisdiction to address."
29 C.F.R. § 1614.302(a)(1).

[12] "A mixed case appeal is an appeal filed with the MSPB that alleges
that an appealable agency action was effected, in whole or in part,
because of discrimination on the basis of race, color, religion,
sex, national origin, disability, age, or genetic information."
29 C.F.R. § 1614.302(a)(2).

In his response to the Navy's instant motion to dismiss, Chilson states that he filed a complaint with the OSC in 2018, which "was not honored since it was time-barred."[13] (Doc. 30 at 6). However, he tacitly acknowledges that he did not complete the second step by bringing an individual action before the MSPB. (See id.; see also Doc. 14 at 7). Nor does Chilson allege that he filed a mixed case complaint with the Agency EEO or a mixed case appeal with the MSPB, or that he exhausted the administrative remedies applicable to mixed cases. His failure to exhaust his administrative remedies under the CSRA precludes judicial review of his allegations that the Agency violated the CSRA's merit system principles. See Ferry, 954 F.2d at 661. Accordingly, count three is due to be dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the undersigned recommends that the Navy's motion to dismiss (Doc. 28) be **GRANTED in part** and **DENIED in part**, as follows:

---

[13] In an earlier filing in this case, Chilson attached a May 30, 2018 letter from the OSC, wherein the OSC acknowledged receipt of Chilson's complaint "that the agency used erroneous medical information about [him] which led to [his] inability to be recruited (June 2014 through March 2015), and which led to his constructive discharge (April 15, 2014)." (See Doc. 14 at 21). In the letter, the OSC informed Chilson that because his allegations concerned events that occurred more than three years before his filing and it appears Chilson knew or should have known of the violation, it had made a determination to close its file on the matter. (See id.).

(Count One) The Navy's motion to dismiss Chilson's Rehabilitation Act claim is due to be **GRANTED;**

(Count Two) The Navy's motion to dismiss Chilson's Privacy Act claims is due to be **DENIED;**

(Count Three) The Navy's motion to dismiss Chilson's claim that the Agency violated merit system principles is due to be **GRANTED.**

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **23rd** day of **October, 2020.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**