**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAN CLINTON CHILSON, | * | |
| | * | |
|     **Plaintiff,** | * | |
| | * | |
| vs. | * | **CIVIL ACTION NO. 19-00016-TFM-B** |
| | * | |
| CARLOS DEL TORO, Secretary, | * | |
| Department of the Navy, | * | |
| | * | |
|     **Defendant.** | * | |

**REPORT AND RECOMMENDATION**

This action is before the Court on Defendant Carlos Del Toro, Secretary, Department of the Navy's[1] ("Agency" or "Navy") motion for summary judgment and incorporated memorandum of law (Doc. 63). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned **RECOMMENDS**, for the reasons stated herein, that Defendant's motion be **GRANTED**, and that this action be **DISMISSED with prejudice.**

---

[1] The Court takes judicial notice that Carlos Del Toro is the current Secretary of the Navy. Accordingly, pursuant to Fed. R. Civ. P. 25(d), the Clerk is **DIRECTED** to substitute Carlos Del Toro, Secretary, Department of the Navy, as the Defendant in this case.

## I.    **INTRODUCTION**

Plaintiff Jan Clinton Chilson ("Chilson"), a former employee at the Navy's Strategic Weapons Facility, Atlantic, initiated this action by filing a *pro se* employment discrimination complaint against his former employer on January 15, 2019. (Doc. 1). The Navy sought the dismissal of Chilson's complaint, and upon consideration, Chilson's disability discrimination claim was dismissed as untimely, and his claim based on Merit System Principles, 5 U.S.C. § 2301, was dismissed for failure to exhaust administrative remedies. (Docs. 28, 33, 35). The Navy now seeks the dismissal of Chilson's remaining claim, which alleges violations of the Privacy Act, 5 U.S.C. § 552a. According to Chilson, the Agency violated the Privacy Act by (1) releasing his medical information, which he alleges mischaracterized his limitations, to Department of the Navy recruiters during the reasonable accommodation reassignment process without his consent in October 2014, and (2) sharing his reasonable accommodation request and associated documentation, including medical information, with a Navy doctor without his authorization in May 2015. (Doc. 1 at 4-5).

As noted *supra*, pending before the Court is the Navy's motion for summary judgment and incorporated memorandum of law, along with supporting exhibits. (Docs. 61, 62, 63). The motion has

been fully briefed and is ripe for resolution. (See Docs. 65, 67).

## II. **FACTS**

Chilson was formerly employed as a Program Analyst, GS-0343-12, at the Navy's Strategic Weapons Facility, Atlantic ("SWFLANT"),[2] located in Kings Bay, Georgia. (Doc. 61-5 at 1). On April 4, 2014, Chilson submitted a Confirmation of Reasonable Accommodation Request Form. (Doc. 61-2). The form contained a section entitled "Privacy Act Statement" that outlined the policies for collecting and disclosing information in connection with a reasonable accommodation request.[3] (Id. at 2).

_____

[2] The Navy states that "SWFLANT is a field activity of, and reports to the Strategic Systems Programs ('SSP'), which is headquartered at the Washington Navy Yard, DC." (Doc. 63 at 1).

[3] The section stated:

> Privacy Act Statement: The collection of this information is authorized by 29 USC 751 et seq. This information will be used to process a request for reasonable accommodation. As a routine use, the information may be disclosed to: appropriate agency officials processing or otherwise responding to the request for reasonable accommodation and/or decisions related to such request; an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the DON is a party or has an interest; to a government agency in order to obtain information relevant to DON decision(s) concerning reasonable accommodation; to a congressional office in order to obtain information relevant to DON decision(s) concerning reasonable accommodation; to an expert, consultant or other person under contract with the DON to fulfill an agency function; to an investigator,

Shortly thereafter, Chilson began treatment with Dr. Ernest Paul Bicknell, Psy.D., of Amelia Psychological Services, LLC. (Doc. 61-3). Dr. Bicknell prepared Chilson's Treatment Summary dated May 20, 2014. (Id. at 2). On May 27, 2014, Chilson submitted the Treatment Summary to his supervisor, Tammy Cobb.[4] (Id. at 1).

---

administrative judge or complaints examiner appointed for the investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; to a labor organization as required by the Federal Labor Management Relations Act; to the Office of Personnel Management in making determinations related to disability retirement and benefit entitlement; to officials of the Office of Workers' Compensation Programs; to the Department of Veterans Affairs; to an employee's private treating physician and to medical personnel retained by DON to provide medical services in connection with an employee's health or physical condition related to employment; and to the Occupational Safety and Health officials when needed to perform their duties. Completion of this form is voluntary. If this information is not provided, processing the request for reasonable accommodation may not be possible.

(Doc. 61-2 at 2).

[4] Chilson's email forwarding the Treatment Summary prepared by Dr. Bicknell stated as follows:

Tammy:

Attached is the summary report from my doctor, Dr. Bicknell. When I met with him last evening, he said that if you have any further questions about the attached report to give him a call.

Since the attached contains very sensitive medical information, it is requested that it only be viewed, or shared, with individuals that have a required NEED TO

On June 26, 2014, Chilson sent an email to Cobb and Eileen Wallace, the Reasonable Accommodation Coordinator assigned to handle his reasonable accommodation request. (Doc. 61-4). He attached to his email additional documentation from Dr. Bicknell that had been requested by the Agency during the reasonable accommodation process.[5] (Id. at 1-2). In the email, Chilson asserted that "30 days is the timeline for reasonable accommodation requests" and thus requested that a written decision on his request be provided by July 7, 2014. (Id. at 1). Chilson stated that if no written decision was received by that time, he would "have to take another course of action." (Id.).

On September 10, 2014, Chilson filed a formal equal employment opportunity ("EEO") complaint of discrimination (Agency No. 14-68733-03051) with the Agency's EEO Office. (Doc. 8-1 at 35). In the EEO complaint, he alleged that the Agency discriminated against

---

KNOW as it relates to Dr. Bicknell's medical summary of myself.

Hopefully this will get the ball rolling as it concerns my request for reasonable accommodation.

Thank you.

Jan

(Doc. 61-3 at 1).

[5] Dr. Bicknell stated that the additional documentation, dated June 23, 2014, was "provided in amplification of my correspondence dated May 20, 2014." (Doc. 61-4 at 2).

him on the basis of disability when it did not furnish him a reasonable accommodation in a timely fashion. (Id.).

On October 1, 2014, as part of the reasonable accommodation reassignment process, Wallace, the Reasonable Accommodation Coordinator, sent a letter to the Navy's Office of Civilian Human Resources ("OCHR") San Diego. (Doc. 61-5). The subject line of the letter was "Medical Limitations Jan C. Chilson", and the letter referenced the limitations and recommendations listed in Dr. Bicknell's Treatment Summary. (Id.).

On November 4, 2014, Wallace sent an email to Navy employees Celina Kline and Brenda Braswell and attached a copy of her letter dated October 1, 2014. (Doc. 61-6). In the email, Wallace stated:

Hi Celina,

As we discussed, I have concerns about providing some of the medical information to the HRC, simply because it may be detrimental to the employee's opportunities for placement. I have attached a document which I prepared on 1 October, but I do not want to share everything on there.

What I propose is:

[REDACTED]

I know it's vague, but I am trying to provide what is necessary, but also to allow the HRC to determine his qualifications.

Please let me know if you have any additional recommendations.

And as always, thank you for your help.

Sincerely,

Eileen

(Id.).

On April 13, 2015, Wallace, on behalf of the Agency's Reasonable Accommodation Committee, sent a letter to Commander Brian R. Riley, M.D., Occupational Medicine Physician, Officer in Charge, Naval Branch Health Clinic, Kings Bay, Georgia. (Doc. 62-1). The letter sought Dr. Riley's medical opinion and recommendations to assist in determining whether reassignment would be an effective reasonable accommodation for Chilson. (Id. at 1). The letter to Dr. Riley referenced and summarized the medical documentation provided by Dr. Bicknell and included Chilson's medical documentation. (See id.). In response to Wallace's letter, Dr. Riley, in a letter dated May 4, 2015, provided his medical opinion as to whether reassignment would be an effective reasonable accommodation for Chilson. (Doc. 62-2). Chilson retired from federal service effective May 31, 2015. (Doc. 8-2).

Before the Agency issued a final decision on Chilson's September 10, 2014 EEO complaint (Agency No. 14-68733-03051), Chilson filed a "Notice of Appeal to the Equal Employment Opportunity Commission" ("Notice of Appeal"), dated August 5, 2015. (Doc. 62-3). In the Notice of Appeal, Chilson asserted, *inter alia*, that the Agency had violated the Privacy Act by

releasing his medical information to a Department of the Navy source outside the Agency without his permission. (Id. at 5). Chilson also asserted that certain "adjective phrases" used in Wallace's October 1, 2014 letter, which were based on Dr. Bicknell's Treatment Summary, "were not factual and in fact discriminatory." (Id.; see Doc. 65 at 24-25). In support of this assertion, Chilson cited his employee performance review for the period ending September 30, 2014, which rated his performance in his current position as acceptable in all critical elements. (Doc. 62-3 at 5; see Doc. 65 at 19-23).

In September 2015, the Agency's EEO Office issued a final agency decision on Chilson's EEO complaint dated September 10, 2014 (Agency No. 14-68733-03051). (Doc. 62-4). The Agency concluded that Chilson was not discriminated against as alleged. (Id. at 1). Chilson appealed the decision to the United States Equal Employment Opportunity Commission ("EEOC") Office of Federal Operations ("OFO").[6] (Doc. 8-1 at 33; Doc. 62-3). On November 7, 2017, EEOC OFO issued a decision on Chilson's appeal, which affirmed the Agency's final decision. (Doc. 8-1 at 33-40). In a footnote to the decision, the EEOC OFO stated:

> We note that on appeal Complainant asserts, among other things, that *the Agency improperly disclosed his*

---

[6] In its decision on Chilson's appeal, the EEOC OFO noted that Chilson's August 2015 Notice of Appeal was premature, but that the defect was cured upon the Agency's subsequent issuance of a final agency decision. (Doc. 8-1 at 33 n.2).

> *confidential medical information on October 1, 2014,* and
> failed to reassign him in 2015, which forced him into
> retirement.   These matters were not the subject of
> Complainant's formal complaint.  Complainant is advised
> that if he wishes to pursue, through the EEO process,
> these additional claims he raised for the first time on
> appeal, he shall initiate contact with an EEO Counselor
> within 15 days after he receives this decision.   The
> Commission advises the Agency that if Complainant seeks
> EEO counseling regarding the new claims within the above
> 15-day period, the date Complainant filed the appeal
> statement in which he raised these claims with the Agency
> shall be deemed to be the date of the initial EEO
> contact, unless he previously contacted a counselor
> regarding these matters, in which case the earlier date
> would serve as the EEO Counselor contact date.   <u>Cf</u>.
> <u>Alexander J. Qatsha v. Dep't of the Navy</u>, EEOC Request
> No. 05970201 (Jan. 16, 1998).

(<u>Id.</u> at 37 n.4) (emphasis added).

Chilson then contacted the Agency's EEO Office about these additional claims and filed a formal complaint of discrimination (Agency No. 15-68733-03625).  (<u>Id.</u> at 6-32).  The formal complaint was dated December 23, 2017, and was received by the Agency's EEO Office on January 3, 2018.  (<u>Id.</u> at 6, 17).  In his EEO complaint (Agency No. 15-68733-03625), Chilson alleged that the Agency discriminated against him based on disability ("ADHD + dyscalculia") when it (1) *improperly disclosed confidential medical information that mischaracterized his limitations,* and (2) failed to reassign him, which forced him into retirement.  (<u>Id.</u> at 11, 13-16).

The Agency's EEO Office dismissed Chilson's complaint (Agency No. 15-68733-03625) for failure to timely contact an EEO Counselor

pursuant to 29 C.F.R. § 1614.105(a)(1).[7]  (Id. at 1-5).  Chilson

timely appealed to the EEOC OFO, which issued a decision affirming

the dismissal on April 18, 2018.  (Doc. 62-5).  Chilson requested

that the EEOC OFO reconsider its decision on his appeal, but the

EEOC OFO denied Chilson's request for reconsideration in a decision

dated October 4, 2018.  (Doc. 1 at 8-10).

Thereafter, Chilson commenced the instant civil action by

mailing his complaint for employment discrimination to the Court.

The envelope containing Chilson's complaint was postmarked January

---

[7] The Notice of Dismissal stated, in part:

> In the Decision on Appeal of your previous Complaint,
> Jan C. Chilson v. Spencer, Secretary of the Navy, EEOC
> Appeal No. 0120152839, DON No. 14-68733-030541 (November
> 7, 2017), the EEOC upheld the Agency FAD and found that
> you had not been denied a reasonable accommodation for
> your purported disability when you were not reassigned.
> (See Enclosure (3), page 5.)  In the same Decision, (page
> 5, footnote 4), the Commission advised you and the
> agency, that if you seek EEO counseling regarding the
> new claims found to be raised for the first time on
> appeal, the date of initial contact with an EEO Counselor
> shall be deemed to be the date you filed your appeal
> statement, unless you previously contacted a counselor
> regarding these matters.  I find that the date of your
> appeal statement, postmarked 4 August 2015, was more
> than 45 days past the date of the 1 October 2014 medical
> information letter and the 31 May 2015 effective date of
> your retirement, and that you did not otherwise
> previously make contact with a counselor in regard to
> these matters.  Therefore, your complaint is dismissed
> for untimely counselor contact.

(Doc. 8-1 at 2).

11, 2019, and Chilson's complaint was received and docketed by the Clerk of Court on January 15, 2019.  (See id.).

III. **STANDARDS OF REVIEW**

    A. **Summary Judgment Standard.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pleaded motion for summary judgment; only the existence of a *genuine* issue of *material* fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "[T]he substantive law will identify which facts are material."  Id. at 248.  At the summary judgment stage, the court's function is not "to weigh the evidence and determine the truth of the matter" but merely "to determine whether there is a genuine issue for trial."  Id. at 249.

The moving party bears the initial burden of informing the court of the basis for its motion and showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate

specific facts showing that there is a genuine issue for trial."
Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th
Cir. 1995) (per curiam) (quoting Celotex, 477 U.S. at 324).  The
court must view the facts and draw all reasonable inferences in
favor of the non-moving party.  Moore ex rel. Moore v. Reese, 637
F.3d 1220, 1231 (11th Cir. 2011).  However, to avoid summary
judgment, the non-moving party "must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 586 (1986).

    **B.**   *Pro Se* **Litigation.**

"*Pro se* pleadings are held to a less stringent standard than
pleadings drafted by attorneys and will, therefore, be liberally
construed."  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th
Cir. 1998) (per curiam).  However, "this leniency does not give a
court license to serve as *de facto* counsel for a party, or to
rewrite an otherwise deficient pleading in order to sustain an
action."  Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69
(11th Cir. 2014) (quotation omitted).  Furthermore, a *pro se*
litigant "is subject to the relevant law and rules of court,
including the Federal Rules of Civil Procedure."  Moon v. Newsome,
863 F.2d 835, 837 (11th Cir. 1989).

## IV.   DISCUSSION

### Chilson's Privacy Act Claims Are Barred by the Statute of Limitations.

Chilson alleges that the Agency violated the Privacy Act on two occasions.  First, Chilson alleges that the Agency violated the Privacy Act because Wallace's October 1, 2014 letter to OCHR San Diego improperly disclosed his medical information to Department of the Navy recruiters without his authorization and mischaracterized his limitations.  (Doc. 1 at 3-5; Doc. 61-1 at 9-11).  The second violation alleged by Chilson is Wallace's April 13, 2015 letter to Dr. Riley.  According to Chilson, in the letter, Wallace improperly shared his reasonable accommodation request and medical information with Dr. Riley without his authorization. (Doc. 1 at 3-5; Doc. 61-1 at 9, 12-14).

The Agency argues that both of Chilson's Privacy Act claims are barred by the Act's two-year statute of limitations because Chilson knew or had reason to know of the alleged violations in 2015 but did not commence the instant lawsuit until January 2019. (Doc. 63 at 9).[8]  For the reasons set forth below, the Court agrees that Chilson's Privacy Act claims are time-barred.

---

[8] A statute of limitations defense "may be raised by motion for summary judgment where the alleged failure to comply with the statute of limitations does not appear on the face of the complaint."  Avco Corp. v. Precision Air Parts, Inc., 676 F.2d 494, 495 (11th Cir. 1982).

**A.    The Privacy Act's Statute of Limitations.**

A Privacy Act claim must be brought:

> within two years from the date on which the cause of
> action arises, except that where an agency has
> materially and willfully misrepresented any information
> required under this section to be disclosed to an
> individual and the information so misrepresented is
> material to establishment of the liability of the agency
> to the individual under this section, the action may be
> brought at any time within two years after discovery by
> the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5).  "A cause of action 'arises' under the

Privacy Act when the aggrieved individual knows or has reason to

know of the alleged violation." Smithers v. Wynne, 2007 U.S. Dist.

LEXIS 23411, at *17, 2007 WL 951748, at *6 (M.D. Ga. Mar. 28,

2007), aff'd, 319 F. App'x 755 (11th Cir. 2008) (per curiam);

Gibson v. Holder, 2015 U.S. Dist. LEXIS 128541, at *23, 2015 WL

5635125, at *7 (N.D. Fla. Aug. 3, 2015), report and recommendation

adopted, 2015 U.S. Dist. LEXIS 128538, 2015 WL 5634596 (N.D. Fla.

Sept. 23, 2015).

As noted *supra*, Chilson filed the instant lawsuit on January

15, 2019.  (See Doc. 1).  Thus, any claims based on alleged Privacy

Act violations that Chilson knew or had reason to know of more

than two years prior to that date are time-barred, unless §

552a(g)(5)'s tolling exception or the equitable tolling doctrine

applies.

With respect to the Privacy Act violation alleged to have

occurred on October 1, 2014, Chilson acknowledges that he learned

of the alleged violation *in March or April 2015*, when he received the EEO Investigative File in Agency No. 14-68733-03051. (<u>See</u> Doc. 61-1 at 10-11). Moreover, Chilson referenced and even quoted Wallace's October 1, 2014 letter (Investigative File p. 193) in his EEO Notice of Appeal dated August 5, 2015. (<u>See</u> Doc. 61-5; Doc. 62-3 at 5).[9]

Similarly, the record reflects that Chilson was aware of the alleged April 13, 2015 violation no later than August 5, 2015, when he cited and referenced Wallace's letter to Dr. Riley (Investigative File pp. 583-85) and alleged a Privacy Act violation based on the release of his medical information to Dr. Riley in his Notice of Appeal.[10] (<u>See</u> Doc. 62-1; Doc. 62-3 at 5-6).

---

[9] With regard to Wallace's letter dated October 1, 2014, Chilson's Notice of Appeal stated:

> The Agency discriminated against the Complainant in the following manners: 1) By utilizing the following adjective phrases for recruiting purposes as it concerned the Complainant: "loss of ability to maintain normal or appropriate psychological defenses, including difficulty with stress management", "inability to perform budgetary duties of his current GS-0343-12 Program Analyst position, "going blank" (IF 193). This correspondence, which was signed by the Deputy Equal Employment Opportunity Officer revealed medical limitations, which were privileged medical information and did severely damage the Complainant's opportunity to secure other Federal employment.

(Doc. 62-3 at 5).

[10] With regard to Wallace's letter to Dr. Riley dated April 13, 2015, Chilson's Notice of Appeal stated: "The Agency discriminated against the Complainant in the following manners: . . . 3) By

Chilson offers nothing to rebut the clear evidence that he was aware of both alleged Privacy Act violations no later than August 2015.[11]  (See Doc. 65).  Instead, Chilson attempts to invoke the tolling exception found in § 552a(g)(5), and he further argues that he is entitled to equitable tolling of the limitations period. (Id. at 2-3).

**B.    Section 552a(g)(5)'s Tolling Exception.**

Section 552a(g)(5) "requires that all claims for actionable agency disclosures be brought within two years of the disclosure *unless* the agency has materially and willfully misrepresented

---

releasing Complainant's provided medical information (to a Navy source outside of the Agency) without the Complainant's permission (IF 583-585).  This violates not only the Privacy Act but also enforcement guidelines of the Commission as it relates to Reasonable Accommodation and the safeguarding of medical information."  (Doc. 62-3 at 5-6).

[11] Chilson asserts that the EEOC OFO "informed" him, in its November 7, 2017 decision on his appeal in Agency No. 14-68733-03051, "'that the Agency improperly disclosed his confidential medical information on October 1, 2014, and failed to reassign him in 2015, which forced him into retirement.'"  (Doc. 65 at 2).  Chilson further states that "the EEOC recognized this act over two years after [Chilson] had notified the Agency of its violation of a medical diagnosis that was not relevant or current and was adverse."  (Id.).  To the extent this amounts to an assertion that Chilson did not know or have reason to know of the alleged Privacy Act violations until he received the EEOC OFO's decision dated November 7, 2017, such an assertion is baseless and mischaracterizes the evidence.  The EEOC OFO's decision did not "inform" Chilson of these alleged violations or "recognize" that they occurred, but rather "note[d] on appeal" that Chilson had *asserted* these matters, which were not the subject of his formal EEO complaint, in his premature Notice of Appeal from August 5, 2015.  (See Doc. 8-1 at 37 n.4).

information that the Privacy Act requires the agency to disclose to an individual, and that misrepresentation is material to establishing the individual's Privacy Act claim," Oja v. U.S. Army Corps of Eng'rs, 440 F.3d 1122, 1136 (9th Cir. 2006) (emphasis in original), in which case the action must be brought within two years of the individual's discovery of the misrepresentation. See 5 U.S.C. § 552a(g)(5).

After noting the existence of § 552a(g)(5)'s limited tolling exception, Chilson states:

> Since the Agency was originally notified in April of 2015 of their usage of an inaccurate medical diagnosis of the Plaintiff, and has had six years to correct the record, accordingly, the Agency's willful pattern of ignoring the Plaintiff's request for correction of the record is in direct violation of the Act.

(Doc. 65 at 3).

This is insufficient to establish that § 552a(g)(5)'s tolling provision applies. Chilson has not identified any information that the Agency was required to disclose and failed to disclose to him. Moreover, he does not assert that the Agency materially and willfully misrepresented information that it was required under the Privacy Act to disclose to him and that was material to him in bringing his Privacy Act claims. Instead, Chilson alleges that the Agency *improperly disclosed information to others* without his consent. Therefore, Chilson's Privacy Act claims do not fall within the scope of § 552a(g)(5)'s limited tolling exception. See

Ford v. Saint Elizabeths Hosp., 1987 WL 18216, at *1 (D.D.C. Sept. 29, 1987) ("Although there is a limited exception to [§ 552a(g)(5)'s] time limit, that exception governs situations where the agency has 'materially and willfully misrepresented any information . . . required to be disclosed.' In this case, the information under question was not required to be disclosed, but rather was allegedly improperly disclosed. As such, it cannot fall within the limited parameters of the above-cited exception.") (internal citation omitted).

Further, to the extent Chilson alleges that the Agency misrepresented information that concerned him, he was clearly aware of the alleged misrepresentations by the time he filed his Notice of Appeal with the EEOC in August 2015. (See Doc. 62-3 at 5). Thus, even if the statutory tolling exception did apply, which it does not, it would not render Chilson's Privacy Act claims timely.

## C. Equitable Tolling.

Chilson also argues that he is "entitled to equitable tolling" of the Privacy Act's statute of limitations. (Doc. 65 at 2). According to Chilson, equitable tolling of the limitations period is warranted because (1) he was "ignorant of the legal requirements of the two-year statute of limitations," and neither the Agency nor the EEOC previously informed him of the two-year limitations period for Privacy Act claims; (2) he "has consistently pursued to

rights to correct an obvious wrong and violation of the law"; and
(3) his delay in filing the instant lawsuit "has not prejudiced"
the Agency.  (Id. at 2-3).

"[T]he Eleventh Circuit has not spoken to whether the Privacy
Act's two-year statute of limitations is jurisdictional in nature,
or whether district courts may equitably toll Privacy Act claims
filed after the expiry of the limitations period."  Gonzalez v.
United States, 2018 U.S. Dist. LEXIS 224454, at *10, 2018 WL
7825025, at *4 (S.D. Fla. Oct. 11, 2018).  "There is currently a
split among the circuits that have considered the issue."  Id.,
2018 U.S. Dist. LEXIS 224454, at *10 n.5, 2018 WL 7825025, at *4
n.5; compare Diliberti v. United States, 817 F.2d 1259, 1262 (7th
Cir. 1987) (holding "that a plaintiff's failure to file suit within
the time period specified in § 552a(g)(5) deprives the federal
courts of subject matter jurisdiction over the action"), and
Harrell v. Fleming, 285 F.3d 1292, 1293 (10th Cir. 2002) ("Failure
to file a Privacy Act claim against the government within the
statute of limitations is jurisdictional."), with Chung v. U.S.
Dep't of Justice, 333 F.3d 273, 278 (D.C. Cir. 2003) (holding that
Privacy Act's statute of limitations is not jurisdictional and
thus subject to equitable tolling), and Rouse v. U.S. Dep't of
State, 567 F.3d 408, 417 (9th Cir. 2009) (same).

The Court need not decide this issue because, assuming
arguendo that equitable tolling applies, Chilson has not

established that his Privacy Act claims should be equitably tolled.
"[E]quitable tolling pauses the running of, or 'tolls,' a statute
of limitations when a litigant has pursued his rights diligently
but some extraordinary circumstance prevents him from bringing a
timely action." Lozano v. Montoya Alvarez, 572 U.S. 1, 10 (2014).
It is the plaintiff's burden to show that equitable tolling is
warranted, and satisfying that burden requires the plaintiff to
prove: "(1) that he has been pursuing his rights diligently, and
(2) that some extraordinary circumstance stood in his way and
prevented timely filing." Villarreal v. R.J. Reynolds Tobacco
Co., 839 F.3d 958, 971 (11th Cir. 2016) (en banc) (quotation
omitted). "Equitable tolling is 'reserved for extraordinary
facts' and is to be applied sparingly." Todd v. Holder, 872 F.
Supp. 2d 1284, 1290 (N.D. Ala. 2012) (quoting Jackson v. Astrue,
506 F.3d 1349, 1354 (11th Cir. 2007)). The Eleventh Circuit has
stated that "the interests of justice on which a tardy plaintiff
relies do not support a plaintiff who has not file[d] h[is] action
in a timely fashion despite knowing or being in a position
reasonably to know that the limitations period is running." See
Chang v. Carnival Corp., 839 F.3d 993, 996 (11th Cir. 2016) (per
curiam) (quotation omitted).

Chilson has failed to identify facts that would warrant
equitable tolling. Chilson's *pro se* status and alleged ignorance
of the Privacy Act's statute of limitations do not constitute

extraordinary circumstances that justify tolling the limitations period. "Ignorance of the law usually is not a factor that can warrant equitable tolling." Wakefield v. R.R. Ret. Bd., 131 F.3d 967, 970 (11th Cir. 1997) (per curiam); see also Bray v. Bank of Am., N.A., 763 F. App'x 808, 811 (11th Cir. 2019) (per curiam) ("Neither Bray's pro se status nor his ignorance of the law, by itself, provides a basis for equitable tolling."); Wallace v. United States, 981 F. Supp. 2d 1160, 1164 (N.D. Ala. 2013) ("Neither miscalculation of the limitations period, nor ignorance of the law, constitutes an extraordinary circumstance that would justify equitably tolling of the statute of limitations.").

Chilson implies that it was the Agency's or EEOC's responsibility to inform him of the applicable limitations period (see Doc. 65 at 2-3), but he cites no authority to support this proposition. See Outler v. United States, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007) (per curiam) (noting that "no case has ever held that a *pro se* litigant should be given actual notice of a statute of limitations" and stating that any "requirement of actual notice would virtually eviscerate the statute of limitations"). Indeed, Chilson has arguably less justification for his alleged ignorance of the statute of limitations than would an average plaintiff, given that he participated in yearly Privacy Act training as a federal employee between 2006 and 2015 (see Doc. 65 at 3), and the

limitations period is readily apparent with even a cursory reading of the statute.  <u>See</u> 5 U.S.C. § 552a.[12]

The Court notes that the extraordinary circumstances prong of the equitable tolling test "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control."  <u>Menominee Indian Tribe of Wis. v. United States</u>, 577 U.S. 250, 257 (2016) (emphasis in original).  Here, the circumstance that allegedly caused Chilson's delay – his own ignorance of the statute of limitations – was neither extraordinary nor beyond his control.  Thus, Chilson has fallen far short of satisfying the extraordinary circumstances prong of the equitable tolling test.

Chilson also fails to meet the other element of the test because he has not shown that he diligently pursued his rights under the Privacy Act.  The record reflects that Chilson was aware

---

[12] Chilson also asserts that "[w]ithin the Federal government there is not any time restriction on when an employee can file a Privacy Act complaint."  (Doc. 65 at 3).  It is not clear whether Chilson is referring to a complaint filed with an agency or to a civil action brought against an agency under 5 U.S.C. § 552a(g)(1).  In either event, Chilson provides no authority to support his assertion, and it is clear that there is a two-year statute of limitations for civil actions raising Privacy Act claims against federal agencies.  <u>See</u> 5 U.S.C. § 552a(g); <u>Gibson</u>, 2015 U.S. Dist. LEXIS 128541, at *22-24, 2015 WL 5635125, at *7 (holding that civil actions under the Privacy Act must be brought against a federal agency, and finding that Privacy Act claims of former FBI employee who alleged that defendants willfully disclosed material to persons and agencies not entitled to receive it were time-barred under § 552a(g)(5) because plaintiff had reason to know of his claims in 1999 but did not file suit until 2014).

of both alleged Privacy Act violations no later than August 2015, yet he failed to bring a civil action raising his Privacy Act claims until January 2019. In light of this substantial delay, and of Chilson's failure to explain *how* he was diligent in pursuing his claims under the Privacy Act, Chilson has not satisfied the diligence prong of the equitable tolling test.

Given Chilson's failure to satisfy either prong of the equitable tolling test, his unsupported argument that his untimely filing has not prejudiced the Agency does not afford a basis for equitable tolling. See id. at 259 n.5 (noting that "the absence of prejudice to the opposing party is not an independent basis for invoking the doctrine [of equitable tolling]" but rather "a factor to be considered in determining whether the doctrine of equitable tolling should apply *once a factor that might justify such tolling is identified*") (emphasis in original) (quotations omitted).

Because Chilson has not demonstrated that his *pro se* status and alleged lack of notice of the two-year statute of limitations constituted extraordinary circumstances, or that he pursued his Privacy Act claims with diligence, he has not shown that equitable tolling of the statute of limitations is justified. Therefore, summary judgment is due to be granted in favor of the Agency, as

Chilson's Privacy Act claims are barred by § 552a(g)(5)'s statute of limitations.[13]

## V.   CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that that the Agency's motion for summary judgment (Doc. 63) be **GRANTED**, and this action be **DISMISSED with prejudice.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period

---

[13] The Agency also argues that it is entitled to summary judgment because the subject disclosures fall within the need-to-know exception to the Privacy Act, and because Chilson's Privacy Act claims fail on their merits.  (Doc. 63 at 13-19).  Because Chilson's Privacy Act claims are clearly time-barred, the Court need not address the Agency's additional arguments in favor of summary judgment.

for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **28th** day of **October, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**